We'll hear the next case on the calendar, United States v. Davis. Good morning, Your Honor. And may it please the Court, Daniel Cain for the United States. The district court in this case misconstrued section 404 of the first F.A.C. To explain why, it's helpful to start with a bit of background. The Fair Sensing Act of 2010 addressed a problem, the disparity between the amounts of powder cocaine and crack cocaine triggering the same statutory penalties. The solution in section 2 was to increase the threshold quantity of the crack triggering those penalties. That way, large-scale crack distributors would still face the same penalties, but lower-level dealers would face lower penalties, more in line with similar powder dealers. But because section 2 wasn't retroactive, it introduced a new disparity between lower-level crack dealers sentenced before the Fair Sensing Act and those sentenced after. And that's the problem that section 404 of the first F.A.C. is meant to solve. The way to solve it, what Congress did, is to make section 2 of the Fair Sentencing Act retroactive. For example, if a defendant trafficked 100 grams of crack before the Fair Sensing Act, he now gets a chance at a reduced sentence, because that offense is no longer subject to the same statutory penalties. In those circumstances, the government readily concedes eligibility and ordinarily acquiesces in the sentence reduction as well. But a defendant who trafficked a kilogram of crack is different. That offense carried the same statutory penalties both before and after the Fair Sentencing Act. So applying the Fair Sentencing Act to that defendant doesn't make the act retroactive. It's just a do-over for a large-scale crack dealer who happened to be sentenced before August 3, 2010. Section 404 doesn't compensate that outcome, and it shouldn't, because it would result in another unfair disparity between defendants sentenced before and after the Fair Sentencing Act. Simply put, a defendant who traffics a kilogram of crack today won't get that same do-over. And that's why, by its text, section 404 directs district courts to consider whether the Fair Sentencing Act actually would have made a difference to the defendant. The operative language here is in section 404A, which defines a covered offense as a, quote, violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act that was committed before August 3, 2010. The district court erred by reading the phrase the statutory penalties for which to modify a federal criminal statute rather than the full integrated noun phrase violation of a federal criminal statute. Properly construed, section 404 asks whether the statutory penalties for the defendant's violation were modified by the Fair Sentencing Act. And because the defendant's violation consisted of conduct, the court has to consider whether the defendant's conduct would have given rise to lower statutory penalties under the Fair Sentencing Act. In this case, Mr. Davis' violation undisputedly involved at least a kilogram and a half of crack cocaine. That quantity gave rise to the same penalties before and after the Fair Sentencing Act, so Mr. Davis isn't eligible for reduction. My three minutes are about up, but I'd be happy to explain exactly why the text of section 404A supports our view and, of course, answer any other questions that the panel may have. Judge Katzen, it's you. Hi, this is Judge Katzen. I unmuted myself. Sorry for the quick delay. We'll have some questions, I know. If you are right that the phrase, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010, refers back to the word violation rather than federal criminal statute, then my question is why did Congress include the phrase federal criminal statute at all? If Congress had omitted that phrase, the statute would have read a violation, the statutory penalties for which were modified by Section 2 or 3 of the Federal Sentencing Act, and you would be right to say that the word violation is the antecedent of the phrase that follows. It seems to me that you're saying that we should give no meaning to Congress's choice to include the phrase federal criminal statute. I don't think so, Your Honor, for two reasons. The first is that although I think the definition of how the word violation works in this context is clear, the word violation does have different meanings in other contexts. For example, there are violations of supervised release. I think by adding federal criminal statute, Section 404 clarifies that we're talking about the underlying offense and not perhaps later violations. But I'd also note that the phrase violation of a statute, violation of a criminal statute, those phrases are ubiquitous in the Code. Those are common phrases, and I don't think there's a tremendous amount of juice to be squeezed from the fact that Congress used a phrase like violation of a federal criminal statute. And to the extent the Court thinks there is some superfluity in the government's reading, there's certainly superfluity in the district court's reading as well, and that's the superfluity of the word statutory. If there are penalties for statutes, assuming there are penalties for statutes, as opposed to penalties for violations, which the government thinks is the more natural phrase, if there are penalties for statutes, those penalties are necessarily statutory. And so the phrase the statutory penalties for the statutes really is redundant. That redundancy... But wouldn't the alternative argument to that be that what Congress was doing when using statutory penalties was to just reinforce that Congress intended to refer only to the statute under which the defendant was convicted? Your Honor, I don't think so. I don't think so, Your Honor. I think the idea of reinforcing its intent, sure, Congress could use the same word twice to make extra super clear its intent. But I think the more natural reading is that, no, statutory actually has some work to do other than reinforcement. And the work it does, if the word modified is violation, the work that statutory does tells us that what we should look at is the statutory penalties for a violation and not the actual sentence that the defendant received. Because as the defense points out rightly, the Fair Sentencing Act, Section 2 of the Fair Sentencing Act, actually did not affect any sentences that actually were imposed, right? It just changed the triggering quantities. The statutory penalties... Your Honor, do you disagree with the general rule of statutory construction that modifier is attached to the closest noun, that courts should not interpret statute in such a way as to divorce a noun from the modifier next to it without some extraordinary reason? Your Honor, I disagree with that framing of the canon. There is a canon that suggests that the nearest reasonable reference is the most likely reference. I think in this case, like in every case, a canon is really only as helpful as the context dictates. And in this context, I think the more natural reference is violation. And I emphasize, as we do in our reply brief, that the Supreme Court itself has said that the nearest reasonable reference canon isn't an inflexible rule that no matter what the most recent, the most proximate noun is necessarily the one modified, particularly where the preceding phrase is one that, quote, hangs together as a unified whole, referring to a single thing. That's from the Supreme Court's decision in Cyan. Here the phrase violation of a federal criminal statute is just that kind of unified whole. It is one single thing, a violation of a federal criminal statute. And so, no, we don't think the canon applies here. The canon applies here. I don't think it's determinative here. Sorry, Your Honor. Let me ask you just one more question and then move it to my colleagues. I just want to be sure about something. You're not disputing that, David, only of a conspiracy involving 50 or more grams of crack cocaine, correct? That's right. The jury found only 50 grams. I mean, he admitted at sentencing that the relevant conduct involved 1.4 milligrams or more. I just wanted to be sure about your position, that you don't dispute that he's convicted only of 50 or more grams of crack cocaine. The jury found he was only charged with, and the jury only, I'm sorry, I'm sorry, talking about the jury, this was a pleading case. He pleaded guilty only to, sorry about that, pleaded guilty only to a 50-gram offense. He conceded in his plea agreement that his relevant conduct involved a kilogram and a half to four and a half kilograms. But that was just a relevant conduct concession in the plea agreement. Of course, in this case, it so happens that that was the quantity involved in the conspiracy. But that's right, Your Honor. Judge Bianco. Yes, thank you, Chief. I just want to pick up on that point, Mr. Cain, because you're putting aside the statutory interpretation issues that I think you have, this policy argument that you're making the purpose to try to treat everyone equally before and after the Fair Sentencing Act. I view Mr. Davis as actually being worse off as a result of your interpretation here, because it's only relevant conduct. He never admitted to this 1.5 kilos of crack at his plea. In his plea agreement, he didn't refer to it as being part of his offense conduct. It simply was relevant conduct. So if this case had happened after the Fair Sentencing Act, relevant conduct would never be a basis for imposing, in this case, a 20-year mandatory minimum. Yet that is your argument here, that something that was only relevant conduct should be the basis for a 20-year mandatory minimum. And that certainly wouldn't be the case after the Fair Sentencing Act, right? But, Your Honor, I agree that a relevant conduct finding standing alone would not be sufficient to trigger the enhanced penalties under B1A or B1B. He's worse off, right? He's worse off than he's not, Your Honor. Why? If he did not, Your Honor, because if we had his case in 2012, and his indictment says what it said in 2008 or 2007, and he pled without reference to this being part of his offense conduct and called it relevant conduct, he would never get the 20 years. If the government charged only 50 grams today, but of course it wouldn't. The government would charge 280 grams today. When an offense involves the offense of quantity of the crime. You're saying that's what the government would have done, but maybe he wouldn't have been stipulated to the 1.5 if it was going to make a difference in whether or not mandatory minimum applied or didn't apply. You're allowing the government to benefit with, you know, what they would have done after the Fair Sentencing Act without considering that it would have altered the defendant's decision-making. Suppose you had a defendant stipulated to 281 grams of crack prior to the Fair Sentencing Act because it wouldn't have affected the mandatory minimum. It would be meaningless. And under your interpretation of the statute, that defendant would be stuck with that stipulation even though it had no relevance for the mandatory minimum to the sentencing at all, right? Wouldn't that be the case? Let me be clear. Let me be clear about this. Just as in the 3582C2 context where there's, likewise, a threshold inquiry that often turns on the quantity involved in the offense, if the defendant wants to put forth an argument at the 404 motion that what he admitted to at his pre-colloquy or what he admitted to at sentencing didn't actually reflect the quantities involved in his offense because he had no incentive to challenge it, he's free to make that argument just as defendants in the 3582C2 context do. This court has made clear that that procedure is available to a defendant. Of course, Mr. Davis hasn't made that choice here, and he can't, because there's no question that Mr. Davis, in fact, as part of this conspiracy, was cooking a kilogram of powder cocaine into crack a month. Who made that finding? What jury made that finding? What admission was ever made in that regard? Mr. Davis admitted at 106, admitted to the factual findings in the PSR, and that's a factual finding in the PSR. Factual findings are the determination as to whether someone's eligible or not? Yes, Your Honor, or subject to challenge by the defendant, but yes, because that is the nature of the defendant's violation. What Congress has directed district courts to consider is whether the defendant's violation is one for which the statutory penalty is not applied. Assume that the defendant objected to it, and what would the standard of proof for a district court to employ with regard to determining whether the defendant was or was not eligible for the reduction, and who bears the burden? You're going to have to do a lot of interlineation, aren't you? No, as in the 3582C2 context, Your Honor. This is not 3582. That's relevant conduct in an alteration of the sentencing guidelines, which is information that's relevant to forming a sentence within the context of the statutorily prescribed violation of law to which the defendant's already been found guilty. That's not this. This is a reduction in the mandatory minimum. This is an alteration of the sentence that the judge must impose, not some exercise of discretion within a set of guidelines as to the minimum and the maximum. So please don't talk to me about 3582. It's a red herring, and it has no relevance whatsoever. With respect, Your Honor, if I can make one quick point on that. If the court isn't satisfied, I'm happy to move on, but just one point, if I may. I grant those distinctions that the court is identifying. Sure. Those are distinctions. However, if you look at the Supreme Court's decision in Dillon, which, yes, concerned 3582C2, which I grant is not the same, the Supreme Court said there is no Sixth Amendment right to have a jury find facts beyond a reasonable doubt that attaches at a 3582C2. And the reason wasn't because, as Your Honor suggests, all that was being changed is the sentence within a statutory guideline. Excuse me. This is a discretionary reduction, so I'll grant you that it doesn't have a Sixth Amendment parameter to it. But it's a question of how to interpret the statute. What did you have to prove? What did you have to prove for this individual, Mr. Davis, to be subject to the 20-year mandatory minimum? What did the indictment say? It said 50 grams or more. That's all it had to say, didn't it? That's right, Your Honor. The government complains mightily that this is unfair to the government somehow because the government could have proved a lot more. Well, the government never complained when all it had to do was prove 5 grams to get a 5-year mandatory minimum or 50 grams to get a 10-year mandatory minimum or a 20-year mandatory minimum with a prior felony. So what this intends to do is rectify that minimal standard that the government enjoyed for such a long period of time that swept in a large group of people, and it made it discretionary with regard to the judge's invocation of it. I don't understand. And lastly, why is it that you haven't appealed in 150 other cases? I'll take those questions in order, Your Honor. I think the last one first. Okay. The government has, of course, in each case, seeks to do justice in a specific context in each case. Are you the fellow that makes this decision? Are you the fellow, the national czar, with regard to this? Is that why you're arguing this case so miserably, is that? Well, Your Honor, of course, appeal authorizations are ultimately at the discretion of the officer, of the Solicitor General himself. So, no, of course, it is not my responsibility to determine whether cases are appealed. Well, you're here. Your name's on the brief. I presume that you have some reason to approve this. Well, Your Honor, of course, my position is that I'm in the process. Just answer my question. Did you approve this? It's not my authority to approve it. I was involved in the approval process for this appeal. Okay. Fair enough. I would like to emphasize, with respect to Your Honor's prior point, the government isn't claiming unfairness to the government here. The government's claiming to be fair. Well, your brief says that. Your brief says that it's unfair because you would have proven more. You never have proven anything other than 50 grams. The government's argument is that it's unfair to later-sentenced defendants, who, if they commit offenses involving a kilogram and a half of crack cocaine, are not going to be allowed. My point to you is that you open a Pandora's box with regard to what the proof would have been, what the conduct would have been, and not in the context of a 3582 situation where the guidelines have changed. But all of a sudden, now judges are going to have to decide what your proof would have been or what the real conduct was. And, boy, you have a hearing. You measure whether previously they agreed to it because it affected sentencing guidelines as opposed to eligibility. Courts will be constructing a new statute for Congress. I wonder if Congress would really like us to do that. Well, Your Honor, as a matter of practice, the government has not been challenging eligibility in borderline cases, and we haven't seen many, if any, hearings as to a defendant's eligibility. Should I look at all 150 and see how many approximate, Mr. Davis? I haven't looked at all, but I guarantee I've got a clerk who will spend the time doing it if that's your view. What I'm saying is the government hasn't standard. Do you want to impose a standard that Davis is the outlier of all 150? Is that what you're saying? No, Your Honor, I'm sorry. Maybe I wasn't clear. What I'm saying is the government hasn't offered evidence. There haven't been evidentiary hearings. This hasn't been a complicated procedure. That's what I'm saying. Your Honor was suggesting that we might be opening up a procedural Pandora's box where courts are going to have to make findings today. What I'm saying is, as in this case, the record is ordinarily crystal clear as to the actual quantities involved in a defendant's defense. That's the finding that the government thinks that Congress is directing district courts to rely on by using the word violation in the statute, which is not the defendant's conviction. As Davis has currently decided, in those 100 and some odd cases that agree with it, how many people still in the federal correctional facilities are there that would be eligible under the Davis Court's interpretation of the statute? How many remain eligible? I'm not certain, Your Honor, how many cases still remain to be adjudicated. There have been more than 2,000 defendants released who have had their sentences reduced as a result of Section 404, most with the government's agreement. It's really only these cases where the factual record, either a plea agreement or jury findings or sentencing findings, dictate a higher quantity that the government has opposed eligibility. Of course, Your Honor is right. The defense cites a slew of district court cases that have gone against the government. The vast majority of defendants have been released under that defense approach. But the government would have agreed to eligibility in the majority of those cases as well, or did, in fact, agree to eligibility. Notwithstanding that it would represent a contrary interpretation of the statute that you pressed here today? Well, no, Your Honor. The government in those cases agrees that the defendant's violation involved only quantities less than the threshold quantities required under the Fair Sentencing Act. All right. I'm sorry. I've monopolized the time too much. And, Judge Bianco, I apologize if I jumped before you had finished your questioning. I apologize. No, that's fine. I was done. I'm done. I'm done, Judge Katzmann. Hello? Judge Katzmann? Judge Katzmann, are you on? Yes, yes. We'll now move to the appellee in this case. Thank you. Thanks. Thank you, Your Honor. Mary Beth Covert from the Federal Public Defender's Office on behalf of Monet Davis. So, Monet Davis pled guilty in May of 2009 to conspiracy to distribute 50 grams or more of cocaine base. That was an 841B1A offense, and with the government's notice for a prior conviction under 851, his statutory range was 20 years to life. The judgment also reflects that the offense was 50 grams or more of cocaine base. This appeal seeks to close the door on what is meant by the term covert offense under the First Step Act, as it's defined in Section 404A. Since those who are convicted of a covert offense under the Act are now eligible to seek a reduction, the district court may but is not required under the Act to reduce somebody's sentence. That discretionary piece, I think, is important here because the government never argued below to the district court that in its discretion it could use or should consider the disparity of what defendant sentenced after the passage of the Fair Sentencing Act which might receive if the government indicted somebody on those new mandatory triggering quantities. They never argued to the district court that it can consider that fact in a discretionary review of the First Step Act motion. In any event, here the district court correctly found that Mr. Davis was convicted of a covert offense because his statute of conviction, conspiracy to distribute 50 grams or more of cocaine base, and not relevant conduct or actual conduct or conduct determined by the sentencing judge through the Pre-Sentence Investigation Report, determinate sentencing, is what drives the eligibility under 404A. Again, the discretionary piece under 404B allows the court to consider what penalty it might have imposed, and here the district court granted Mr. Davis' motion. I will also note to the court he has been released from the Bureau of Prisons and he's been serving a term of supervised release. He was released from the Bureau of Prisons in March of last year and released from his state term in May of 2019 and has been serving supervisory since then. So the government's suggestion that we look and we interpret the statutory language in a way that doesn't comport with what I would say are sort of commonplace and standard canons of statutory construction, things like Congress means what it says when they include language within a statute, and I believe, Judge Katzmann, you said it. If a federal criminal statute is included in that language under 404A in the definition of a covered offense, it has to have some meaning, and it does have meaning. What was the federal criminal statute which Mr. Davis was convicted of? It's an 841B1A offense of 50 grams or more. That penalty no longer is 20 to life for him. The Fair Sentencing Act, Section 2 of the Fair Sentencing Act changed those statutory penalties. Those statutory penalties now are 10 to life, and the district court appropriately found Mr. Davis eligible for a reduction and that he was convicted of a covered offense and therefore it moved on to Section B, the discretionary determination as to whether or not he deserved a sentence reduction, and the court granted that reduction. We're asking just for the court to recognize, and it's been mentioned earlier, about the plethora of district court decisions, but there are also several appellate court decisions that have addressed the issue, that have addressed the points the government has raised in various contexts since our briefing. We filed those in 28J letters, specifically United States v. Jackson and United States v. Wersing, both of which deal with statutory construction and why offensive conviction is the driving force to statute of conviction and not relevant conduct or actual conduct, as the government is arguing. And then two other decisions, Venus v. McDonald from the Eighth Circuit and the Sixth Circuit. While I know those are not controlling, I think the overwhelming amount of persuasive authority is that Mr. Davis' reading and the district court's reading of the statute is that a cover of offense necessarily is the statute of conviction approach. Let me, this is Judge Katzmann, begin with some questions to you. And just to be clear in my own mind, in order for your client to prevail, do we have to adopt an interpretation of a statute that would confer Section 404 eligibility on all crack cane offenders, or is there a narrower category into which your client falls? So let me just answer that and back up just a minute. The government suggested in its reply brief that under our reading somehow we would expand eligibility to those who were not even crack cocaine offenders, and I don't see our reading of the statute as requiring that at all. I do think that the statute, if there's a conviction for a crack offender, a cocaine-based offender, that that allows them to come in and ask the court for independent consideration of a possible reduction. So are you saying that it's limited to crack cocaine offenders? Yes, I don't believe it. I don't believe it, for example, I don't see how the reading that we're purporting would suggest, because my violation has to have been modified by Section 2 or 3 of the First Sentencing Act. My offensive conviction has to have been modified by that act, and that act only modified convictions for cocaine-based. Now, a central part of your adversary's argument is that your interpretation would create disparities between a defendant in your client's position and one who is in the same exact position, except for having committed the offense after August 3, 2010. How do you respond? Well, the government's sort of asking the court to speculate as to what it might have charged had those earlier penalties been available to it, but they weren't available to it. So Mr. Davis' indictment, as it was in 2009, would never have read he was responsible for cocaine-based, you know, in excess of 280 grams. That wasn't what the statute read at the time. It was 50 grams, and his offensive conviction hasn't changed. So the way that I think that the disparity issue actually gets resolved is through Section 404B. But the court, in looking at it, you know, had the government argued to the district court, no, there's this disparity that's going to happen for folks who were sentenced after because we might have been able to charge it differently. Well, maybe the court could have considered that, as along with all the other factors that it can consider in terms of its discretion on whether to grant a reduction or not, which includes everything under 3553. Then maybe the court, the district court at the first level, would be able to, you know, make a determination as to whether or not that's true and whether or not that's persuasive. But it would give defendants an opportunity to present that case and argue why, for example, well, that's not true. Take, for example, a defendant who is not at Mr. Davis' level but is at 281 grams of cocaine base. Well, here it's the government's own, you know, policy in terms of how they're operating with respect to these cases that has created disparity, number one, because we have a number of cases that haven't been appealed and issues that haven't been raised and that were for the litigation itself. But for somebody who didn't challenge that judicial finding in a pre-sentence investigation report because it didn't matter, but it was 208, just over the threshold, that person at the government's whim gets to say, you know, is denied eligibility, denied their foot in the door, even to have a district court take a look at it. And I just think that's not the appropriate reading of the Act. Before I turn this over to Judge Bianco, just one last question, I just want to be sure about something. You're no longer challenging that 18 U.S.C. 3852C1B was the appropriate means for your motion for Section 404 release. Is that correct? That's correct, Your Honor. No, we are not. Okay, thank you. Judge Bianco. Thank you, Chief. I just want to go back to this issue of a windfall, unequal treatment. I think Chief Judge Taxman is right that if we do go along with your interpretation, you know, it would apply to every crack cocaine, B1A conviction, regardless of what the facts were of the case. And it could result in what the government would say is a windfall where someone, you know, then is able to avoid a mandatory minimum that even after the Fair Sentencing Act they would otherwise have. For example, I don't know if this is a real hypothetical or not, the government mentioned in their brief that if you even had an indictment where the indictment said 1.5 kilos and the defendant pled guilty to an indictment that said 1.5 kilos, under your reading of the statute, that defendant would still be eligible to avoid the mandatory minimum, even though it was in the indictment and even though he admitted to it. Or you could have a jury finding, you know, after Apprendi, a lot of judges and prosecutor's offices started submitting findings to the jury after the announcement. You could have a jury finding of 1.5 kilos, and under your approach, those defendants would be eligible and avoid a mandatory minimum. Isn't that right? Well, I guess because when you look at, you know, what the federal criminal, because we have to give meaning to the words federal criminal statute. So if, you know, yeah, Mr. Davis' case doesn't present that, but if the district court presented with an eligible defendant because, you know, it's the statute of conviction that's controlling, you know, I think we would trust our district courts to recognize that in those scenarios, perhaps that defendant shouldn't receive a reduction. And then if the court granted that reduction, an appellate court would be available to review and determine whether or not that court abused its discretion. I know, but it couldn't be an abuse of discretion because the judge would have to have applied the mandatory minimum, right? By virtue of your interpretation, the mandatory, you know, it couldn't be reversed on that ground. It would have to be reversed based upon, you know, other factors, right? No, I'm saying if it were granted. So for somebody like Mr. Davis, I guess maybe I'm not quite understanding the question because for Mr. Davis, his maximum sentence remained life, right? So if the district court in looking at this said, well, I still want to impose the 241 sentence, it still could have done that. Even under his new guidelines. I understand that, but in judges exercising their discretion absent a mandatory minimum, you're going to have these disparities, I guess, is my point. And the government, in their brief on page 21, gave another example which is, you know, very extreme, but I again think at least possible under your interpretation of the statute where a defendant of two prior convictions, after the Fair Sentencing Act, you know, has a finding of 1.5 kilos, is going to get a mandatory life sentence, whereas the same defendant prior to the Fair Sentencing Act, the mandatory minimum would key off of an 841B1B, and the mandatory minimum would be 10 years. So you have the difference between a mandatory life and a mandatory of 10 years, even though, you know, the finding was the same with respect to both of them. I'm just trying to point out, I don't think you can argue that there's not going to be disparate treatment. I think your argument is that, you know, the statute says. Yes, I'm not arguing that there wouldn't be disparate treatment. I do think that there is a possibility for that to exist, but I think that the answer for that would be that Congress can go back and fix that if Congress wants to fix that. All right. Thank you. I have no other questions. The point is, I take it as COVID, that there may very well have been disparity prior to the statute, but it was disparity above the mandatory minimum of 10 or 20 years, depending upon the nature of the offense, right? I mean, because your sentencing guideline, I mean, what did Davis get originally from Judge Scrutiny? 240 months. He got the mandatory minimum. He got the mandatory minimum. What was his sentencing range? Slightly above that, 262 to 327, I believe. So he could have gotten 327, and we would have said, oh, it was in the guidelines range, and he could have gotten life, right? Right. So, I mean, there's a little bit of a room for discrepancy there already. I mean, it seems to me Congress has left a gaping hole and decided to leave it up to judges, and this is a discretionary call. The question is whether Davis is or is not eligible for that discretionary call. That's what the argument is about today, isn't that it? That's the only issue before the court today is eligibility. Thank you, Ms. Korn. Thank you very much. Thank you. We'll now hear a rebuttal. Thank you, Honors. Just a couple of quick points in rebuttal. The first is I think there's a strong argument on the other side that we ought to just, that what Congress really wanted here is to kick the discretionary question to district court judges and allow them to resolve any disparities. A couple of points in response to that. First, again, we don't think the text allows it. We don't think that is what Congress allows here. It requires court, Section 404A requires courts to consider whether the defendant's violation was one for which the statutory penalties were modified. But even on the level of purpose, I do want to be clear about this. A discretionary sentence reduction is itself a profound benefit. Now, empirically we know that courts are likely to reduce it. Mr. Cain, let me ask you this. Say Mr. Davis had pled guilty and then subsequent investigations have determined that his organization was responsible not for 1.5 kilos but for 25 kilos. What's his conduct? What's his violation? The 1.5 or the 20 that the subsequent investigation turns out? I think, Your Honor, the violation is most reasonably assessed by reference to the original trial record. So what's the rule you want? If we go your way, what's the rule? The rule is that an AUSA state's an open court, that we could prove 1.5 if we had to, although all we need to only prove is 50, Your Honor? The rule is exactly the same as that which applies in the 3582C2 context, which is the court should consider it. You and I are not going to agree on 3582A, so please don't give me that answer. I'm not saying that you have to buy the analogy. I'm giving you an easy source. I'm just trying to understand the scope of Pandora's box that you wish us to open. So what is it the district court asks of the AUSA? What was your case at that time? What could you have proven? Is that it? The answer is what quantity is readily apparent. The answer is what quantity is readily apparent, and it's the government's burden, but what quantity is readily apparent from the original record? Is that the language you'd like us to employ in this? If we agree with you, you'd like us to say what was readily apparent? What is apparent from the record? It's a preponderance question. It's the quantity apparent from the original record. And how credible does it have to be? Let's say the talk comes from CIs or other people, other members of the organization. What's the standard? What's the proof level to understand what the violation is? A preponderance of the evidence, Your Honor. In most cases, it really is not going to be. It's a preponderance of the evidence. In most cases, it's not like this case. It's not going to be controversial. And if I can, I'd like to just say that. Give me solemn, Mr. King. Give me solemn. That it's not going to be controversial. Well, I think it's okay. Could you finish up your point? I think your final time is over. I'm sorry. Let me just finish with one final point. If this court is inclined to accept the defense position, I would ask the court to try to be careful about exactly which statutes are the ones that offer a covered offense. I think the defense argument here is that defendants convicted of offenses other than crack offenses won't be eligible, and that seems obviously right. There are harder questions about, for instance, A41B1C defendants or defendants, subjects who were convicted for dual object conspiracies, where the conspiracy independently would have supported B1A penalties, say, for a drug other than crack cocaine. So I think if this court is inclined to go in the defense direction, I think the most logical approach would be to cabin this holding to B1A3 and B1B3, which are the two provisions, and of course 960, the associated provisions of 960, as those provisions were the ones that were directly modified by, and of course 846 to the extent, 846 and many other statutes to the extent that they incorporate those penalty provisions. Thank you, Your Honor. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. We'll hear the next case on that. Thank you. We'll hear the next.